IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN GREEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-22-2559 |
| v. | § | |
| | § | |
| HCTEC PARTNERS, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM AND OPINION**

Karen Green alleges that her employer, HCTec Partners, LLC, discriminated against her because of her race and sex and subjected her to a hostile work environment. (Docket Entry No. 1). Green reported her complaints to the human relations department on February 3, 2021. (Docket Entry No. 76-3 at ¶ 14). She was terminated on May 13, 2021. (*Id.* at ¶¶ 23, 26). Green alleges that the company retaliated against her for the complaints she reported. (Docket Entry No. 1). HCTec moves for summary judgment on all claims. (Docket Entry No. 75). Based on the pleadings, the motion, the briefs, the record, and the applicable law, the motion for summary judgment is granted. Final judgment is separately entered.

The reasons for these rulings are set out below.

**I.    Background**

Green, an African American woman, was hired by HCTec as a Team Lead in April 2018. (Docket Entry No. 1 at 3). Green's direct supervisor was Bernard Rush, an African American man. (*Id.* at 3). In January of 2021, Green was promoted to Tier 2 Manager. (Docket Entry No. 75 at 12). Green asserts that, in 2021, Rush began treating her differently from the other Tier 2 Manager, Ryan Noland, a white male. (Docket Entry No. 1 at 3). Green claims that Rush was dismissive,

ignored her inquiries or requests for information, and questioned—badgered—about whether she had completed a task. (*Id.*). Green alleges that in contrast, Noland would receive prompt responses from Rush for the same or similar inquiries or requests for information and was taken at his word when responding to questions about his completion of tasks. (*Id.*).

Green also claims that she was assigned heavier workloads than Noland and was given a larger number of subordinate employees for which she was responsible. Green alleges that she had to work an additional 10-15 hours per week. (*Id.* at 4). Green points to Rush's assignment of a large project to her, although it had been previously assigned to Noland. Green complains that the reassignment was improper because Noland was a certified project manager, and Green was not. (Docket Entry No. 76 at 16).

In February 2021, Green complained about disparate treatment in Rush's responses to her requests for information. Green made her complaint to HCTec's Senior Human Resources Business Partner, Trayce Moyolo. (Docket Entry No. 1 at 4). Green alleges that she did not complain about other ways in which Rush was treating her unfairly because Rush and Mayolo had a close relationship. Green alleges that Rush had previously told her that Mayolo "would, in a general sense, always be on Rush's side." (*Id.*). Despite this statement, Green told Mayolo that Rush was discriminating against her based on her race and sex. (*Id.*).

After making this complaint, Green had a three-way call with Rush and Mayolo. Rush explained his actions toward Green. (*Id.*). Green claims that another employee later informed her that Mayolo had told Rush about Green's complaint before the call took place. Green also claims that during the three-way phone call, Mayolo sent private messages to Rush instructing him on how to respond to Green's accusations. (*Id.*). Green attempted to speak with Rob Dreussi, HCTec's

Chief Information Officer, about this situation, but Dreussi would not meet or speak with Green without Rush present. (*Id.* at 4-5).

Green alleges that after she complained about Rush, he began retaliating against her by adding to her workload while lessening Noland's. (*Id.* at 5). Green alleges that in May 2021, after she tried to compel an insubordinate employee to perform his job duties, she reported the problem to Rush via a Microsoft Teams post. (*Id.*). Green's message stated, "[I] am done[.]" (*Id.*). Green also sent a follow-up message stating that she intended to schedule a meeting with HCTec leadership. (*Id.*). Green alleges that two days later, Rush and Mayolo told Green in a phone call that her employment was terminated for posting an inappropriate message in the Microsoft Teams chat. Green alleges that the inappropriate message referred to was her "[I] am done" statement. (*Id.*). Neither the meeting nor the termination reason was documented. (Docket Entry No. 76 at 18). Green alleges that Noland sent inappropriate communications and emails to clients and HCTec leadership, including Rush and Dreussi, but Rush was reprimanded and counseled, not fired. (Docket Entry No. 1 at 5).

HCTec responds that it fired Green because of a team meeting at which Green was unprepared and had failed to follow routine procedures, such as asking the attendees if they had any additional comments before ending the meeting. HCTec also points to an incident in which Green told Rush that she was reluctant to meet with a subordinate employee she was responsible for to discuss putting him on a performance improvement plan, despite the fact that Green's job included such tasks. (Docket Entry No. 75 at 9-10, 12). HCTec asserts that when Rush asked why Green was reluctant to meet with the employee, Green allegedly responded that, because of the employee's ethnicity, national origin, and Middle Eastern culture, he would be confrontational with her because she is a woman. (*Id.* at 10, 12).

3

HCTec also alleges that Green sent Rush an email questioning his decision to support a client's request and copied the client on the email. HCTec asserts that copying the client on the email could jeopardize the contractual relationship and negotiations between HCTec and the client. (*Id.* at 10). Green claims that Rush did not support the client's request and that Green copied the client on the email to let the client know Rush's position. (Docket Entry No. 76 at 19-20). HCTec did not document issues about Green's performance or qualifications before she was fired, other than in an email from Mayolo describing her performance as poor. (Docket Entry No. 75-6 at 4; Docket Entry No. 76 at 9). HCTec alleges that Green's peers described her performance as poor and embarrassing. (Docket Entry No. 75 at 9).

## II. The Legal Standards

### A. The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment may merely point to the absence of evidence and thereby shift to the non-movant the

4

burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

B.   **The Discrimination and Retaliation Claims**

At the summary judgment stage, courts evaluate discrimination and retaliation claims using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002); *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). Under this framework, the plaintiff must

first establish a prima facie case. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). If the plaintiff does so, the burden shifts to the employer to offer a nondiscriminatory or nonretaliatory reason for the employment action. *Id.* at 557. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* If the employer does meet their burden, the burden again shifts so that the plaintiff must show that the employer's reason is a pretext for the real discriminatory or retaliatory purpose. *Id.*

Pretext is established when the plaintiff shows that the employer's proffered explanation is false or "unworthy of credence." *Wallace v. Methodist Hospital System*, 271 F.3d 212, 220 (5th Cir. 2001) (internal citations omitted); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation[.]" *Reeves*, 530 U.S. at 147–48. The court does not require further evidence of a defendant's true motive—evidence demonstrating that the employer's explanation is false or unworthy of credence supports an inference of discrimination. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002); *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 223 (5th Cir. 2000).

**III.   Analysis**

    **A.   The Discrimination Claims**

Green alleges both race and sex discrimination. Both claims rely on the same set of facts. Following the *McDonnell Douglas* framework, Green must first establish a prima facie case of discrimination on each of these bases. *McCoy*, 492 F.3d at 556-57. A prima facie case of discrimination requires showing that the plaintiff: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action

6

by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Id.* at 556; *Stroy v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018).

In this case, there is no dispute as to the first element. Green is a member of the relevant protected classes—*i.e.*, she is an African American woman. However, HCTec disputes elements two through four.

As to the second element, HCTec points to Green's alleged job performance issues—"Green's inappropriate message to Rush [and] her behavior in meetings, and [her] communications with important HCTec clients" (Docket Entry No. 75 at 17)—as evidence that Green was not qualified for her position. But "an employer's subjective determination of poor job performance is insufficient to prove a lack of qualifications at the prima facie stage." *Fontenot v. Republic Nat'l Distrib. Co., LLC*, No. 2:15-CV-01774, 2017 U.S. Dist. LEXIS 170839, at *14 (W.D. La. Oct. 13, 2017) (citations omitted) (the defendant did not show that the plaintiff was unqualified for his position despite a "history of performance deficiencies and fail[ure] to improve"). The evidence shows that Green was qualified for the position when HCTec hired her and promoted her.

The third element of a prima facie showing of discrimination requires the plaintiff to show that she was discharged or suffered another adverse employment action. *McCoy*, 492 F.3d, 556. HCTec argues that Green "must show that she would not have suffered an adverse employment action 'but for' the protected activity." (Docket Entry No. 75 at 18). That is true as to Green's retaliation claim, but not her discrimination claim. Under the *McDonnell Douglas* framework, the plaintiff must show that an adverse employment action has occurred to establish this third element of a prima facie case of discrimination. For example, in *Hassen*, the court acknowledged that the defendant-hospital did not hire the plaintiff for a full-time position and that her hospital supervisor

7

discouraged her from applying for a promotion. *Hassen v. Ruston La. Hosp. Co.*, LLC, 932 F.3d 353, 356. In the words of the *Hassen* court: "Adverse employment action: check." *Id.* The court considered Hassen's termination and stated: "whatever the reason—and even though the hospital told her she could reapply—the hospital fired Hassen. So, under the *McDonnell Douglas* framework, Hassen established that element of her prima facie case." *Id.* at 358 (emphasis added). Green has shown she was terminated and thus satisfies this prima facie element.

The fourth and final element of the *McDonnell Douglas* framework requires the plaintiff to show that she was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group. *McCoy*, 492 F.3d, 556. HCTec contends that Green was replaced with Oluyseyi Amele, an African American woman. (Docket Entry No. 75 at 8). Green disputes this and alleges that Noland (a white man) assumed most of Green's duties and that Brandi Brock (a white woman), took over the remaining duties. (Docket Entry No. 76 at 11). Green alleges that Amele took over most of Nolan's duties only after Noland was terminated. (*Id.*). Green also contends that Amele's title was then "interim manager," a different title than Green had held. (*Id.*).

The record does not support HCTec's assertion that Amele replaced Green. (Docket Entry No. 76-3). While the Fifth Circuit has held that "a temporary replacement . . . outside of the protected class is insufficient to establish a prima facie case of discrimination when the permanent replacement is in the plaintiff's class," there is no record evidence that the transfer of duties to Noland and Brock was intended to be temporary. *Pizzolato v. French Mkt. Corp.*, 2015 U.S. Dist. LEXIS 119981, *10. Green has raised a genuine factual dispute material to determining whether she was replaced by someone outside her protected group.

Green could also meet the fourth element by showing that she was treated less favorably than other similarly situated employees outside her protected groups. *McCoy*, 492 F.3d, 556. Employees are similarly situated when they (1) hold the same job or responsibilities, (2) share the same supervisor, or (3) have their employment status determined by the same person and have essentially comparable violation histories. *Morris v. Town of Indep.*, 827 F.3d 396, 401 (5th Cir. 2016). Green alleges that Noland, a white man, had the same job (Tier 2 Manager) and the same supervisor (Rush). (Docket Entry No. 76 at 8). Green alleges that: Noland would receive prompt responses for inquiries or requests for information from their supervisor when Green would be ignored; Noland would be taken at his word when responding to questions about his completion of tasks, but Green would be badgered or questioned; Green was assigned heavier workloads and more subordinate employees for which she was responsible than Noland; and Noland received guidance, counseling, and a performance improvement plan before adverse action, while Green was terminated. (Docket Entry No. 76 at 4).

HCTec admits to the difference in workload and number of subordinate employees between Green and Noland. HCTec claims to have offered "coaching and counseling" to Green, (Docket Entry No. 75 at 11), but provides no evidence in support. HCTec does not dispute that Noland received various remedial approaches to issues regarding "communication and other behaviors with clients." (Docket Entry No. 76-3 at 7). *McDonnell Douglas* does not demand a showing that race or sex was the but-for cause of this disparate treatment at the pretext stage; the inquiry is merely whether there was disparate treatment. The court finds that Green has raised factual disputes material to determining whether she was treated less favorably than her white male counterpart.

9

Because Green has established a prima facie case of race and sex discrimination, the burden shifts to HCTec to proffer a nondiscriminatory reason for the employment action. *McCoy*, 492 F.3d at 557. HCtec offers the following: Mayolo's description of Green's performance as poor and embarrassing, (Docket Entry No. 75 at 9; 75-6 at 4); Green's lack of preparation for team meetings, (*id.*); Green's reluctance to perform a job duty and subsequent inappropriate comment about a subordinate's ethnicity, national origin, and Middle Eastern culture, (*id.* at 10, 12); and Green's act of copying the client on an email disagreeing with her supervisor's decision about a client request. (*Id.*). The Fifth Circuit has held that poor or unsatisfactory performance is a legitimate nondiscriminatory reason for terminating an employee. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015)). HCTec has met its burden to articulate a legitimate, nondiscriminatory reason, shifting the burden back to Green to show that HCTec's reason is pretext for discrimination or retaliation. *McCoy*, 492 F.3d at 557.

The court's inquiry is "whether [HCTec's] perception of [Green's] performance, accurate or not, was the real reason for her termination." *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999)). Green does not dispute her failure to be prepared for a team meeting, her reluctance to meet with a subordinate to discuss a performance improvement plan, or the comments she made to her supervisor about her subordinate's culture and ethnicity. Green does dispute that her performance was poor, pointing to positive mid-year evaluations. (Docket Entry No. 76 at 14). Green also disputes that she improperly copied a client on an email, claiming that she did so at Rush's direction. (*Id.* at 19-20).

Green also argues that when she was fired, she was told that the only reason was the allegedly inappropriate "I am done" message Green sent her supervisor on a Microsoft Teams post.

10

Green argues that "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147 (internal quotation marks and citations omitted); *see also Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002) (an employer's inconsistent explanations for its employment decisions at different times may permit a jury to infer the reasons are pretextual). Additionally, Green asserts that HCTec's failure to practice its usual progressive discipline plan of warnings, coaching, counseling, and a performance improvement plan, gives rise to an inference of pretext. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n.29 (5th Cir. 2005).

The record does not give rise to factual disputes material to determining whether HCTec's proffered reason was pretextual. Even if the reason HCTec gave at the time it terminated Green differs from its proffered reasons at summary judgment, that does not mean that HCTec's proffered reasons are unworthy of credence. Such an inference may be made "[i]n appropriate circumstances," but here, Green has "created only a weak issue of fact as to whether the employer's reason was untrue." *Reeves*, 530 U.S. at 148. Even if HCTec did not follow its usual policies before terminating Green, an employer's disregard of its policies "does not of itself conclusively establish that . . . a nondiscriminatory explanation for an action is pretextual." *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996). Green's pretext evidence is weakened by uncontroverted evidence showing that she did refuse to perform her job duties of working with a subordinate employee; that she did make inappropriate comments about that employee's culture and ethnicity; and that she did post the message "I'm done" on Microsoft Teams. *Reeves*, 530 U.S. 133, 148.

Green has failed to raise a genuine factual dispute material to determining whether HCTec's explanation for her termination was a pretext for sex or race discrimination. Summary judgment is granted on the discrimination claim.

### B. The Retaliation Claims

Green alleges retaliation on the basis of both race and sex. These claims rely on the same set of facts as the discrimination claim. A prima facie case of retaliation requires the plaintiff to establish that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her after the protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556-57.

There is no dispute that Green participated in a protected activity: complaining about alleged sex and race discrimination to HCTec's Human Resources Department on February 3, 2021. Green suffered an adverse employment action after this protected activity: termination on May 13, 2021.

The last element of a prima facie case of retaliation requires Green to show the causal connection between her protected activity and her termination. The time between these two events is approximately two and a half months, or ten weeks. "This court allows . . . for an inference of causation to be drawn where the adverse employment action occurs in close temporal proximity to the protected conduct." *Richard v. Cingular Wireless LLC*, 233 Fed. App'x 334, 338 (5th Cir. 2007). The Fifth Circuit has held that two and a half months is sufficiently close, but has also said this amount of time is "not, by itself, enough to show a causal connection[.]" *Richard*, 233 F. App'x at 338; *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 402 (5th Cir. 2012). The court

assumes that the time period between her protected activity and her termination supports an inference of causation.

The burden then shifts to HCTec to articulate a legitimate, non-retaliatory reason for Green's termination. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995). HCTec relies on the same reasons that it gave in opposition to Green's discrimination claims: Green refused to perform her job duties of working with a subordinate employee; she made inappropriate comments about that employee's culture and ethnicity; and she posted the message "I'm done" on Microsoft Teams. *Reeves*, 530 U.S. 133, 148. Green has failed to show that but for her protected activity, she would not have been terminated. *See Garcia v. Prof'l Contract Services, Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) ("After the employer states its legitimate reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred but for the employer's retaliatory motive.") (quoting *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)) (alteration adopted).

Summary judgment is granted on the retaliation claim.

## C. The Hostile Work Environment Claim

Green alleges she suffered a hostile work environment based on race and sex. These claims rely on the same set of facts. A hostile work environment claim requires a plaintiff to show a "genuine dispute of material fact that (1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action." *Wilkinson v. Pinnacle Lodging, L.L.C.*, 2023 U.S. App. LEXIS 26545, *13 (quoting *Wantou v.

*Wal-Mart Stores Tx., LLC*, 23 F.4th 422, 433 (5th Cir. 2022)) (citations omitted). To affect a term, condition, or privilege of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Wantou*, LLC, 23 F.4th, 433. A court determines if a workplace is "hostile" or "abusive" by examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Harris v. Forklift*, 510 U.S. 17, 23 (1993)).

Green points to Rush's treatment of her during her employment at HCTec. She alleges that Rush was dismissive of her, ignored her inquiries or requests for information, questioned and badgered her about whether she had completed a task, and assigned her heavier workloads and more subordinate employees for whom she was responsible so that she had to work an additional 10-15 hours per week. Green also alleges that she was assigned a project for which she was not certified and that she was not provided any warnings, coaching, performance improvement plans, or other alternative discipline before termination.

The court holds that these incidents are not, as a matter of law, sufficiently severe or pervasive to create a cause of action for a hostile work environment. Instead, these incidents are the sort of "ordinary tribulations of the workplace" that are insufficiently "extreme," and would threaten to turn Title VII into a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284, 141 L. Ed. 2d 662 (1998); *see also Payton v. City Univ. of N.Y.*, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) ("Conduct that is 'merely offensive, unprofessional, or childish' cannot support a hostile work environment claim.") (quoting reference omitted). Green does not identify any comments with "overt or inferential racial[] [or] gender-based . . .

14

overtones"—let alone the sort of "steady barrage" of such comments necessary to sustain a hostile work environment claim. *Aguirre v. Valerus Field Sols.*, *L.P.*, No. CV H-15-3722, 2019 WL 2570069, at *9 (S.D. Tex. Jan. 23, 2019), *report and recommendation adopted sub nom. Aguirre v. Valerus Field Sols. LP*, No. 4:15-CV-03722, 2019 WL 989413 (S.D. Tex. Mar. 1, 2019). As for Green's allegations that she was ignored and given a heavy workload, courts hold that this sort of conduct does not generally support a hostile work environment claim, at least when not accompanied by evidence of sex or race-based animus. *See, e.g.*, *id.* (rejecting claim based, in part, on allegations of "being given an overload of job duties"); *Hiner v. McHugh*, 546 Fed. App'x. 401, 408 (5th Cir. 2013); *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 14CV5125CBARER, 2018 WL 1603872, at *10 (E.D.N.Y. Mar. 30, 2018), *aff'd*, 767 Fed. App'x. 123 (2d Cir. 2019); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 679–80 (S.D.N.Y. 2011); *Murray–Dahnir v. Loews Corp.*, No. 99 CIV, 9057 LMM, 1999 WL 639699, at *4 (S.D.N.Y. Aug. 23, 1999); *Chacko v. Connecticut*, No. 3:07-CV-1120 (CFD), 2010 WL 1330861, at *11 (D. Conn. Mar. 30, 2010).

Summary judgment is granted on the hostile work environment claim.

**IV.  Conclusion**

The motion for summary judgment is granted. (Docket Entry No. 75). A final judgment will be issued separately.

SIGNED on August 15, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge